UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH L. MCFERON, ) | |
| ) | CASE NO. C11-5719-RSL-MAT |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner ) | APPEAL |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Deborah L. McFeron proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for an award of benefits.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1957.[1] She completed high school and previously

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

worked as a bartender. (AR 36, 48.)

Plaintiff filed an application for SSI in February 2007, alleging disability since August 2, 2002. (*See* AR 53, 98.) Her application was denied initially and on reconsideration, and plaintiff timely requested a hearing.

On November 13, 2009, ALJ Richard Say held a hearing, taking testimony from plaintiff and a vocational expert. (AR 32-52.) On December 7, 2009, the ALJ issued a decision finding plaintiff not disabled. (AR 16-27.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 1, 2011 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since February 1, 2007, the application date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post cervical spine fusion, status post left knee anterior cruciate ligament repair, arthrosis, depression, and anxiety severe. Step three asks whether a claimant's

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff capable of performing light work and frequently balancing, but limited to only occasional stooping, crouching, crawling, kneeling, and climbing. He found plaintiff able to understand, remember, and carry out short simple instructions, and able to perform routine tasks. While she should have no interaction with the general public, she could have occasional, superficial interaction with supervisors and coworkers. With that assessment, the ALJ found plaintiff unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the Medical-Vocational Guidelines and with the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a small products assembler, paper sorter/recycler, and laundry folder.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Because SSI disability payments are not payable prior to the month after a claimant's application date, plaintiff amends her alleged onset date to February 1, 2007. She argues the ALJ failed to properly evaluate the medical evidence and her testimony, improperly determined her RFC, and failed to meet the burden of showing she could perform any work in the national economy. Plaintiff requests remand for an award of benefits.

The Commissioner concedes the existence of reversible errors in the ALJ's decision, including in the consideration of plaintiff's mental impairments at step two, the evaluation of the medical evidence, and in the RFC assessment and step five findings. The Commissioner does not concede error in the credibility analysis, maintaining it retains the support of substantial evidence. The Commissioner further disagrees with the request for an award of benefits, arguing the matter should be remanded for further administrative proceedings.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

In this case, plaintiff persuasively argues that this matter should be remanded for an award of benefits. The ALJ made a number of errors, including an initial, insufficiently supported rejection of a variety of mental health-related diagnoses, "including but not limited to post traumatic stress disorder, psychotic disorder, schizoaffective disorder, attention deficit hyperactivity disorder, and polysubstance abuse in remission[,]" because the ALJ was "more persuaded" by opinions attributing plaintiff's symptoms to depression and anxiety. (AR 18.) The Commissioner maintains that further proceedings should be held to allow the ALJ to fulfill his duty to develop the record in this regard, to allow for further consideration of the medical evidence, and in light of significant issues with plaintiff's credibility. None of these arguments are persuasive. Instead, as discussed below, the record already contains a significant amount of medical evidence and opinions as to plaintiff's mental impairments which the ALJ either did not evaluate or failed to sufficiently evaluate, including opinions which, if credited as true, support a finding of disability.

Many of the mental health diagnoses summarily rejected by the ALJ came from plaintiff's care providers at Columbia River Mental Health Services (CRMHS), where she received care beginning in April 2007 and extending through the date of the ALJ's decision. (AR 21.) The care providers included treating physicians Drs. John Lindgren and Richard Shuey and examining physician Dr. Patricia Gardner, and a number of "other source" care providers, *see* 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p ("acceptable medical sources" include, for example, licensed physicians and

REPORT AND RECOMMENDATION
PAGE -5

psychologists, while other non-specified medical providers are considered "other sources.") As described in detail in plaintiff's briefing, the CRMHS physicians noted numerous and significant mental health symptoms in examinations over the course of plaintiff's treatment, including, *inter alia*, panic, paranoia, depression, anxiety, auditory illusions and hallucinations, poor concentration and short-term memory, scattered and tangential thought processes, poor judgment, limited insight, and visual hallucinations. (AR 257-60, 356-62, 473-74; *see also* Dkt. 14 at 3-6.) The other sources repeatedly observed similar symptoms. (AR 197-207, 243-56, 325-55, 363-75, 445-72; *see also* Dkt. 14 at 11-15.)

The ALJ acknowledged the existence of the diagnoses from CRMHS and estimates of plaintiff's Global Assessment of Functioning (GAF) in the range from 27 to 50, reflecting, at best, serious symptoms or impairment in plaintiff's functioning. (AR 21-22); Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR) (GAF between 21 and 30 describes behavior "considerably influenced by delusions and hallucinations," "serious impairment in communication or judgment," or "inability to function in almost all areas; GAF between 31 and 40 describes "[s]ome impairment in reality testing or communication" or "major impairment in several areas"; GAF of 41 to 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"). However, the ALJ's consideration of the CRMHS evidence was limited to the observation that, when seen in July 2009 for medication review, a provider noted plaintiff "had been doing well for the past year on Risperdal and Dexadrine." (AR 22 (citing AR 473).) As conceded by the Commissioner, the ALJ erred in providing no reasons for rejecting the CRMHS evidence. *See generally Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (ALJ must provide "clear and convincing" reasons for

rejecting uncontradicted physicians' opinions and "specific and legitimate" reasons for rejecting contradicted opinions); SSR 06-03p (ALJ must also expressly consider opinions from "other sources"). *See also Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) ("If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'"; a finding that the opinion is not so supported or is inconsistent with the record "'means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.'") (quoting 20 C.F.R. § 404.1527(d)(2) and SSR 96-2p).

The record also contained relevant opinions from examining physician Dr. Jamie Carter. Dr. Carter, in February 2008, assessed plaintiff as markedly limited in her ability to learn new tasks, to exercise judgment and make decisions, to interact appropriately in public contacts, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (AR 320.) He reflected that plaintiff scored "20/30" on her mental status examination (MSE) and opined that her prognosis was "guarded," noting plaintiff continued to exhibit psychotic symptoms, depression, anxiety, and difficulty caring for herself despite her receipt of mental health treatment. (AR 323.) Dr. Carter further opined:

> Although she is able to understand, her reasoning is concrete and is also likely to be affected by psychotic symptoms. She has impairment in memory and concentration. She has very limited social interactions and is anxious around others. She would have significant difficulty in adapting to a work setting due to her psychotic symptoms, anxiety, impairments in memory, concentration, and reasoning. Her deficits in interpersonal interactions would also affect adaptation.

(AR 323-34.)
REPORT AND RECOMMENDATION
PAGE -7

In January 2009, Dr. Carter again examined plaintiff and assessed the same marked limitations, along with a marked limitation in her ability to relate appropriately to coworkers and supervisors. (AR 311-16.) Dr. Carter noted a score of "17/30" on MSE and assessed plaintiff's prognosis as poor for the same reasons previously reflected, while adding that she "appear[ed] to be even more emotionally fragile than usual." (AR 316.) He further observed that plaintiff's reasoning was affected by her psychotic symptoms, that her memory and concentration were impaired on MSE, and that "she would have significant difficulty in adaptation to a work setting due to her psychotic symptoms, impairment in cognitive functioning (memory, concentration, reasoning) and anxiety." (AR 316.)[2]

The ALJ accorded "some weight but not great weight" to Dr. Carter's opinions "as he failed to adequately consider claimant's serious credibility issues in addition to her history of noncompliance with treatment." (AR 23.) However, as conceded by the Commissioner, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (noting nothing in record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations). The ALJ, therefore, also failed to provide sufficient reasons for rejecting the opinions of Dr. Carter. Further, contrary to the Commissioner's suggestion, the RFC assessment – finding plaintiff able to understand,

---

2 Dr. Carter indicates he also examined plaintiff in March 2007 (AR 315, 322), but it is not clear whether the record contains any materials related to such examination.

remember, and carry out short simple instructions, perform routine tasks, have no interaction with the public, and have occasional, superficial interaction with supervisors and coworkers – does not account for the marked limitations and other observations as to plaintiff's poor mental health as opined to by Dr. Carter.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

Courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). Therefore, applying the "credit-as-true" rule "is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting

*Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). *See also Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) ("In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant."; remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally insufficient). On the other hand:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (cited sources omitted).

Here, the vocational expert testified that, considering Dr. Carter's assessment of a significant difficulty in adapting to a work setting and marked limitation in responding appropriately to and tolerating the pressures and expectations of a normal work setting, plaintiff would not be able to maintain employment. (AR 50-51.) As such, crediting Dr. Carter's opinions as true supports a finding of disability. (*See also id.* (the vocational expert also testified that plaintiff would not be able to maintain employment with consideration of a marked difficulty in completing specific tasks in a timely or consistent manner).)

Moreover, other medical records provide support for plaintiff's claim. While examining physician Dr. Lawrence Moore, in November 2003, noted his inability to review plaintiff's medical records and described plaintiff as a poor historian, he nonetheless deemed plaintiff acutely mentally ill, describing her as "a concrete-thinking, mentally confused and disinhibited individual whose cognition appears to be affected by an underlying thought

disorder[,]" and observed that MSE "indicate[ed] [significant] struggles with confusion, tangential thinking and difficulty staying on task." (AR 160-65.) In a detailed addendum, Dr. Moore described symptoms observed, deemed those symptoms as appearing to be "frankly psychotic in nature[,]" and opined that plaintiff demonstrated "difficulties in her ability to reason, concentrate, persist in activities, adapt to new situations and interact socially," while she did have a "generally intact ability to understand and remember." (AR 164-65.) In May 2007, examining physician Dr. Paul Michels was able to offer only a tentative assessment of plaintiff given the absence of medical records for review, plaintiff's presentation "as a vague, tangential, and circumstantial historian[,]" and her provision of inconsistent and contradictory information. (AR 194.) The ALJ determined that Dr. Michels' opinion could not be accorded great weight given his inability to provide a definite characterization of plaintiff's symptoms. (AR 23.) The ALJ did not, however, consider the consistency of plaintiff's vague and tangential presentation to Dr. Michels with the bulk of the medical evidence in the record.

In fact, the only contrary medical opinions within the record consisted of opinions rendered by nonexamining physician Dr. William Lysak and later affirmed by Dr. Vincent Gollogly. (AR 211-28, 279.) The ALJ afforded those opinions – assessing moderate limitations at most – "great weight." (AR 23.) However, the opinions of non-examining physicians are generally entitled to less weight than treating or examining physicians, and "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830-31 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). *See also Orn*, 495 F.3d at 632

("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'")

Given the above, the Commissioner does not persuasively establish the need for further consideration of plaintiff's mental impairments on remand. While the Commissioner suggests the benefit of ordering a consultative psychological evaluation with testing or acquiring the assistance of a medical expert, remand would not be appropriate simply to allow the ALJ an opportunity to acquire information favorable to his position. *See Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) ("In cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony.")

Nor does the Commissioner support his contention that the credibility assessment (*see* AR 21-26) retains the support of substantial evidence, or that the ALJ should be allowed to address the above-described errors given issues with plaintiff's credibility. As argued by plaintiff, the ALJ's failure to properly evaluate the objective medical evidence necessarily implicates the credibility assessment. *See generally Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (in assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'") (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). In fact, the nature and extent of the medical evidence not

properly considered by the ALJ calls into question a number of factors he relied on in the credibility assessment, including plaintiff's non-compliance with treatment, the waxing and waning of her symptoms, her depiction as an unreliable historian, and her sporadic work history. *See*, *e.g.*, *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)); *Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001) (given continuing treatment and physicians' conclusions that a claimant's work skills were seriously deficient, "'doing well' as a chronic schizophrenic is not inconsistent with a finding of disability.") (internal citations omitted). *See also Lester*, 81 F.3d at 833 ("Occasional symptom-free periods - and even the sporadic ability to work - are not inconsistent with disability."). Indeed, if anything, it appears that the ALJ was only able to reach his conclusion with respect to plaintiff's credibility by focusing on plaintiff's depression and anxiety, and disregarding the evidence of her other mental impairments. (*See*, *e.g.*, AR 22 ("Although multiple physicians have assessed that claimant's depression and anxiety affect her residual functional capacity, it is remarkable that no physician has opined that claimant's depression and anxiety are disabling."))

As with the medical evidence, this matter should not be remanded merely to allow the ALJ an opportunity to make additional findings with regard to plaintiff's credibility. *Varney*, 859 F.2d at 1401. Nor does the Commissioner otherwise point to sufficiently compelling evidence addressed by the ALJ in the credibility assessment that would serve to establish either

an outstanding issue requiring further resolution, or to call into question the conclusion that it is clear from the evidence that the ALJ would be required to find plaintiff disabled if he credited the improperly disregarded evidence.

Finally, the fact that plaintiff has already waited over five years for this disability determination and that additional proceedings would pose further delay additionally weigh in favor of an award of benefits. *See Smolen*, 80 F.3d at 1292 (noting seven-year delay and additional delay posed by further proceedings); *Varney*, 859 F.3d at 1398-99 (noting that the claimant had already waited over five years since applying for benefits; "Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage – financial, medical, and emotional."); *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would only prolong already lengthy process and delay benefits). For all of these reasons, this matter should be remanded for an award of benefits.

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for an award of benefits.

DATED this 7th day of May, 2012.

Mary Alice Theiler
United States Magistrate Judge